Spear, J.
An analysis of the pleadings, together with concessions and uncontradicted statements on oral argument in this court, shows this kind of a case: John Rock, being at the time the owner of a parcel of land situate on Woodland avenue and Kinsman street, in the city of Cleveland, on November 4, 1905, by a duly executed lease, leased the same unto the Building Company, a corporation, for ninety-nine years from and after December 31, 1905, the lease providing for the payment of specified rentals, and the doing of other things, including also the right to construct buildings and make other improvements upon the premises, which buildings and improvements, at the end of the term, if the provisions thereof had been fully complied with, should belong to the lessee, but in case of failure of said Company to comply with said provisions, the lease might be forfeited and terminated, and thereupon said premises and all said buildings and improvements should *248 become the property of the lessor, and he would have the right to take and thereafter hold possession of the same. Said lease was not delivered at its date, but was delivered at a time hereinafter stated.
On November 13, 1905, the Building Company as principal and the Surety Company as surety, entered into a written bond or contract with Rock in the sum of five thousand dollars, which bond contained the condition following:
“The condition of this obligation is such that whereas the said The Monarch Building Company has entered into a certain lease of premises owned by said John Rock, located on Woodland avenue and Kinsman street in the city of Cleveland, Ohio, for ninety-nine years from December 31, 1905, a copy of which lease is hereto attached marked' ‘Exhibit A.’; that said The Monarch Building Company, as part consideration for the leasing of said premises, has agreed with the said John Rock to erect upon a part of the premises described in said lease, a building or buildings costing not less than ten thousand ($10,000.00) dollars; this obligation is to become void when such building or buildings are completed ready for occupancy.
“Now, therefore, if said The Monarch Building Company, its successors and assigns, shall cause to be erected at its own expense a building or buildings upon said leased premises costing not less than ten thousand dollars, then this obligation shall be void; otherwise the same shall be and remain in full force and virtue in law.”
The lease is not set out in haec verba in the *249 pleadings, but it seems not to be doubted that while the lease contemplates that the lessee will erect a building or buildings on the premises, yet the lease contained no provision whereby the Building Company obligated itself in terms to erect buildings, the definite obligation in that respect being contained in the bond. The bond, it is to be noted, specifies no time for the erection of a building or buildings. The lease, a copy of which was attached to the bond as Exhibit A., set up in the defendant’s answer, provides that in case the lease is forfeited by reason of the default of the lessee, the buildings are to belong to the lessor, but in case the lease remains in force during the term, the buildings are to enure to the benefit of the lessee either by purchase by the lessor, or, in case of renewal of the lease, to remain the property of the lessee.
On delivery of this bond to the plaintiff, to-wit: November 13, 1905, and as part of the transaction, Rock delivered the lease to The Monarch Building Company, which Company entered into possession of the premises and held the same until the forfeiture of the lease as hereinafter stated.
The Building Company, without any apparent cause, having neglected and failed to erect any building on the premises, the plaintiff, on January 7, 1909, notified the defendants in writing, demanding of them that the building or buildings be forthwith erected in pursuance of the terms of the bond, and that unless a building or buildings should be forthwith erected in pursuance of the terms of the bond, and that unless the same should *250 be commenced on or before February 1, 1909, and thereafter be continued to completion, suit would be commenced on the bond for the recovery of damages and said lease forfeited.
Sometime prior to February 15, 1909, the Building Company having failed' to pay the rental and comply with the terms of the lease relating thereto, an action was commenced by Rock in the court of common pleas against the Building Company and others, praying forfeiture, and on the above date the court adjudged the lease forfeited in so far as the remainder of the term was concerned. Rock went into possession of the premises.
Prior to the beginning of the above action and prior to the judgment forfeiting ■ the lease, the Building Company had become insolvent, and a reasonable time had elapsed for the erection of the building or buildings, but the defendants had wholly failed to erect the same or any part thereof.
Upon this state of the case what should have been the judgment?
The substance of the claim of plaintiff in error is that by the terms of the bond, the obligation imposed upon the Building Company was to erect the buildings within a reasonable time, and the failure so to do, and the failure of the lessee to pay rent, worked a breach of the bond and justified a forfeiture of the lease.
The substance of the claim of defendants in error is that there was no default of the bond by reason of the failure to erect the buildings because the lessee.had the full term within which to perform; that the plaintiff had himself altered the *251 surety’s risk and the surety is therefore discharged; that the bond was not a security against forfeiture; and these propositions seem to have met with the approval of the circuit court and to have been the basis of its judgment.
The question, therefore, is, did the lessee have to the end of the term to erect the buildings, and also did the forfeiture of the lease procured by the plaintiff itself absolve the surety of its liability on the bond?
The fact that the buildings, the subject of controversy, were, at the expiration of the term, (the lease and bond still being in force), to be' and remain the property of the lessee, differentiates this case from many to be found in the books. And the inference is obvious that the purpose of the bond was not to benefit the lessor in case the stipulations of the lease were fully performed by the lessee, but to afford a security and to further indemnify him against loss in case of forfeiture to the lessor for performance of the stipulations as to the payment of rent because of default of the lessee. Had. the lease provided that the buildings were to become the property of the lessor at the end of the term it would manifestly have been to his advantage to have their erection delayed. But, under the terms of the lease with regard to the buildings there could have been no rational purpose of the bond other than to afford a security to the lessor of the performance by the lessee of the stipulations on his part to be performed. That is, the added value to the land by the erection of buildings thereon was plainly the object of the *252 bond. Otherwise that instrument was an idle ceremony. The lessee had agreed to erect the buildings. The surety thereupon agreed that the lessee would perform that contract. When? It is inconceivable to suppose that the parties understood that the performance of that contract, and the consequent life of the bond, was to be postponed for ninety-nine years. Why go through the useless formality of giving and receiving a formal bond which was not, after all, to create any obligation admitting of practical enforcement?
Courts are required, by the application of known rules of law, to enforce valid and reasonable contracts of parties, with the view of carrying out their clear intent, rather than, by resort to technical construction, to render such contracts void. That is certain which may be made certain. Hence the well established rule, and one requiring no citation of authorities in its support, that where the consideration is legal and the promise to perform is clear, but no time for performance is definitely stated in the contract, the stipulation is to be performed within a reasonable time, such being the presumed intent of the parties to be drawn from the entire instrument. We think the rule applies to the circumstances of this case. We think, also, that three years and three months afforded abundant time within which to at least commence the erection of the buildings under the agreement, especially as reasonable notice was given to commence. The foregoing, we think, answers the first proposition urged by defendants’ counsel.
*253 As to the claim that the surety was discharged by the action of the plaintiff in procuring a forfeiture of the lease and resuming possession of the land, we think the foregoing sufficiently covers it. Surely it could not be assumed that the parties contemplated that plaintiff would withhold, for ninety-nine years, action to get rid of an insolvent lessee, one who had repudiated its contract, being indeed unable to perform it. While it is true that the bond does not bind the obligor to make good the rent, nevertheless the failure to pay rent by the lessee brought about a condition which made the failure to erect the buildings a material damage to plaintiff, and which justified him in seeking a forfeiture and in resorting to the bond for his damages thereunder. At least there is nothing in the bond which enjoins any duty on the lessor to withhold effort to enforce his remedy. We hold that the forfeiture of the lease procured by the plaintiff did not absolve the surety from its liability under the bond.
These conclusions require a reversal of the judgment of the courts below, and the cause having been submitted. to the trial court by both parties, it follows that plaintiff in error is entitled to final judgment. The cause will, therefore, be remanded to the court of common pleas with direction to render judgment for plaintiff in accordance with the prayer of his petition.

Reversed.

Davis, C. J., Shauck, Johnson, Donahue and O’Hara, JJ., concur.